MICHAEL S. BRANDT (SBN 172582)
michael@amazonsellers.attorney
AMZ SELLERS ATTORNEY
9350 Wilshire Blvd., Suite 203
Beverly Hills, CA  90212
Telephone:  (888) 886-2440

*Attorney for Plaintiffs,*
VYACHESLAV SHIROKOV and
FIREBIRD GT LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VYACHESLAV SHIROKOV and FIREBIRD GT LIMITED, a Hong Kong corporation,<br><br>Plaintiffs,<br><br>v.<br><br>YAN ARDATOVSKIY; DEVELUP PRIVATE ENTERPRISE, business form unknown; STEPAN BURLAKOV, NEXA NOVA TECHNOLOGIES, LTD., a UK limited company, RAILMONSTERS.COM, business form unknown, INFINIUS INVESTMENTS, LIMITED, a Cyprus limited company, VLADIMIR CHERNYATOVICH, also known as VLADIMIR CERNEATOVICI, an individual, and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 3:25-cv-2701<br><br>**COMPLAINT FOR COPYRIGHT INFRINGEMENT, UNFAIR COMPETITION, MISAPPROPRIATION OF TRADE SECRETS (DTSA), AND FEDERAL TRADE DRESS INFRINGEMENT** |

VERIFIED COMPLAINT

Plaintiffs, VYACHESLAV SHIROKOV and  FIREBIRD GT LIMITED, ("Plaintiffs") hereby allege as follows:

## PARTIES

1.      Plaintiff VYACHESLAV SHIROKOV is an individual and citizen of Malta, residing in Monaco, and the owner of the copyrighted technology at issue in this matter, referred to as the RAIL NINJA COMPUTER PROGRAM.

2.      Plaintiff FIREBIRD GT LIMITED is a corporation incorporated in Hong Kong, with its principal place of business in Malta.

3.      Defendant YAN ARDATOVSKIY is an individual, citizen of Russia, residing in Roqueburne, France.

4.      Defendant DEVELUP PRIVATE ENTERPRISE, also known as DEVELUP PE, is a business entity whose form is unknown at the present time to Plaintiffs, with its principal place of business in Odesa, Ukraine.

5.      Defendant STEPAN BURLAKOV is an individual, citizen of Russia, residence unknown.

6.      Defendant VLADIMIR CHERNYATOVICH, also known as VLADIMIR CERNEATOVICI, is an individual, citizen of Moldovia, residing in Ukraine.

7.      Plaintiffs allege that Defendant VLADIMIR CHERNYATOVICH is the alter ego of Defendant DEVELUP PRIVATE ENTERPRISE, and so dominated and controlled DEVELUP that the corporation lacked any separate existence, as evidenced by the commingling of personal and corporate funds, failure to observe corporate formalities, inadequate capitalization, and use of the corporation as a mere shell for personal dealings; thus, recognizing DEVELUP's separate legal status would perpetuate injustice by allowing CHERNYATYOVICH to evade personal liability for the corporation's obligations.

8.      Defendant NEXA NOVA TECHNOLOGIES, LTD. is a UK limited company, with its principal place of business in Roquebrune, France.

9.      Defendant INFINIUS INVESTMENTS, LIMITED is a Cyprus limited company, with its principal place of business in Roquebrune, France.

VERIFIED COMPLAINT

10.     Plaintiffs allege that Defendant YAN ARDATOVSKIY is the alter ego of Defendant INFINIUS INVESTMENTS LIMITED, and so dominated and controlled INFINIUS that the corporation lacked any separate existence, as evidenced by the commingling of personal and corporate funds, failure to observe corporate formalities, inadequate capitalization, and use of the corporation as a mere shell for personal dealings; thus, recognizing INFINIUS's separate legal status would perpetuate injustice by allowing ARDATOVSKIY to evade personal liability for the corporation's obligations.

11.     Defendant RAILMONSTERS.COM (RAILMONSTERS) is a business entity whose form is unknown at the present time to Plaintiffs.   RAILMONSTERS delivers the content of the RAILMONSTERS website to United States customers through CLOUDFLARE, INC.'s servers in San Francisco, California.   Upon information and belief, Plaintiff alleges RAILMONSTERS is an unincorporated entity owned by Defendant NEXA NOVA TECHNOLOGIES, LTD.

12.     Defendants DOES 1 through 100, inclusive, are unknown to Plaintiffs, who therefore sue such defendants by such fictitious names.  Plaintiffs are informed and believe that each of the Defendants has diverse citizenship to the Plaintiffs, and Plaintiffs will seek leave of court to allege their true names and citizenship when ascertained.

13.     On information and belief, at all times material to this action, each Defendant was acting as an agent, servant, partner, and/or alter ego of each of the remaining Defendants and, in connection with the matters alleged herein, was acting in the course and scope of such agency. Plaintiff is further informed and believes, and on that basis alleges, that each Defendant, while acting as principal, expressly acted with the knowledge of the other Defendants and/or expressly directed, authorized, affirmed, consented to, ratified, encouraged, approved, adopted, and/or participated in the acts or transactions of the other Defendants.

## **JURISDICTION**

14.     Plaintiffs hereby repeat and reallege each and every allegation contained within paragraphs 1 through 13 of the complaint, and incorporate the same by reference as though set forth in full herein.

VERIFIED COMPLAINT

15.     This Court has jurisdiction over this matter pursuant to 28 USC §§ 101, 1331, 1338.  The Court has jurisdiction over Plaintiffs' copyright infringement claims predicated on violation of the copyright laws of the United States of America, 17 U.S.C. § 101, *et seq.*, and Plaintiffs' claims for California Unfair Business Practices, in violation of California Business and Professions Code § 17222, *et seq.* This Court has jurisdiction over Plaintiffs' claims for Misappropriation of Trade Secrets pursuant to 18 U.S.C. § 1836, *et seq.* It has jurisdiction over Plaintiffs' claims for Federal Trade Infringement pursuant to 15 U.S.C. § 1125(a).

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.  The amount in controversy exceeds $75,000 and diversity of citizenship exists.

17.     Defendants are subject to the personal jurisdiction of this Court pursuant to Fed. R. Civ. P. 4(k)(1) because Defendants transact business in the State of California and in this District. Defendants have specifically marketed, offered to the public, and otherwise trafficked in the infringing work at issue in this proceeding in the United States and in this District. Defendants have filed to register the trademark, "Rail Monsters" in the United States, alleging first use of said mark in the United States on July 4, 2024, in conjunction with the Rail Monsters website.  Defendants purposefully direct their activities into this District and to residents of this District, do business with residents of this District, and avail themselves of the privilege of conducting business in this District. Plaintiff's claims arise out of and relate to Defendants' activities in this District.

18.     This Court has personal jurisdiction over the Defendants in that Defendants' infringing works are made available for use to the public through the internet service provider, Cloudflare, Inc., through their servers in San Francisco, California, and at the Apple Store and Google Play stores, located in the State of California. Defendants purposely availed themselves of conducting a business and by causing a consequence in the State of California, by, among other things, advertising and selling infringing services to consumers in the State of California through one or more highly active commercial app stores, including the Apple Store in Cupertino, California, and the Google Play Store in Mountain View, California.

VERIFIED COMPLAINT

## FACTS COMMON TO ALL CAUSES OF ACTION

19.    Plaintiff SHIROKOV, is the owner of the RAIL NINJA COMPUTER PROGRAM (hereinafter "Rail Ninja Computer Program", "Rail.Ninja" app or the "Work") and all Trade Secrets associated therewith.  SHIROKOV has licensed the RAIL NINJA COMPUTER PROGRAM and Trade Secrets to Plaintiff, FIREBIRD GT LIMITED, the operator of the https://rail.ninja (the "RAIL.NINJA Website") and Rail.Ninja iOS and Android mobile applications ("Rail.Ninja mobile app or apps").  The Rail.Ninja website has been operating since 2016, reserving and booking train tickets for customers all over the world.

20.    Plaintiff and Defendant ARDATOVSKIY became friends several years ago, as their children attend the same private school in Monaco.  In early 2023, ARDATOVSKIY confided with Plaintiff that he was experiencing financial difficulties, and Plaintiff offered to explore whether he could be an asset to Plaintiff's businesses, which are all tech-related travel businesses.

21.    Plaintiffs took precautions to protect their trade secrets such as securing physical spaces, password protecting computer access, limiting access to certain information and spaces to those who are on a "need to know" basis, and utilizing confidentiality/non-disclosure and other agreements and policies restricting employees and contractors from being able to use confidential information for any purpose other than for his business.

22.    On March 1, 2023, Defendant ARDATOVSKIY signed a general non-disclosure agreement with Plaintiff, FIREBIRD GT LIMITED, to begin exploring Defendant's employment possibilities with the Plaintiff.  A true copy of the agreement is attached hereto and incorporated by reference herein as Exhibit 1.

23.    SHIROKOV and ARDATOVSKIY decided that, given ARDATOVSIKY's background in computer app design, he could best serve Plaintiff's business by improving Plaintiff's Rail.Ninja website and the development of a mobile application for the same.

24.    On March 1, 2023, Plaintiff and ARDATOVSIKY entered into a second non-disclosure agreement with four of Plaintiff SHIROKOV's companies to begin working on the improvement of the Rail.Ninja site and development of the Rail.Ninja mobile app (hereinafter collectively "the Project");

Firebird GT Limited, Arsia Limited (Cyprus), Arsia AG, and Arsia Limited (Malta) (collectively the "ARSIA GROUP"), a true copy of which is attached hereto and incorporated by reference herein as Exhibit 2.

25.     Plaintiff and ARDATOVSKIY entered into an oral agreement for the Project and ARDATOVSKIY's compensation for the Project included monthly stipends of $13,000 USD per month, a promise of full-time executive employment upon successful completion, and a percentage of the gross profits from the app's income.  Attached hereto and incorporated by reference herein as Exhibit 3 is a true copy of a memorandum summarizing the compensation terms.

26.     ARDATOVSKIY worked on the Project at Plaintiff's home in Monaco, with full access to Plaintiff's personal computer, business records, internal company systems, and trade secrets, including the structure and source code of the Rail.Ninja website. He also participated in management and strategic meetings with Plaintiff and Arsia Group executives.  He was given free access to all the Arsia Group's information about the FIREBIRD GT's company performance, pricing information, contractual terms, market allocations, client information, and business strategies.  He was given access to proprietary information regarding the Rail.Ninja website, such as coding, advertising history, satellite web site creation and search engine optimization strategies, FIREBIRD GT's markets, strengths and weaknesses, and  customer base.  He was given access to the Plaintiffs' Google Play Console to work on the android mobile application for Rail.Ninja, and Plaintiff's Apple Developer account to work on the iOS application, as well as access to Plaintiff's Google Workspace where Plaintiff posted ideas from his own technical team who also worked on the apps.  He also had access to the Arsia Group's and FIREBIRD GT's confidential inter-company messaging system in Discord, where he had the username, "y.ard".

27.     ARDATOVSKIY, as representative of Defendant DEVELUP PRIVATE ENTERPRISE (hereinafter "DEVELUP"), brought DEVELUP in as his "team" from Ukraine, as well as Defendant STEPAN BURLAKOV, a partner with DEVELUP'S principal owner, Defendant VLADIMIR CHERNYATOVICH, in the Russian software development company, Freeger, to work with him in designing and writing the code for the Project. ARDATOVSKIY acted as Project Manager for the Project, and Plaintiff SHIROKOV entered into a separate written contract with DEVELUP, represented by

VERIFIED COMPLAINT

Defendant ARDATOVSKIY, to develop the RAIL NINJA COMPUTER PROGRAM.  A true copy of said agreement is attached hereto and incorporated by reference herein as <u>Exhibit 4</u>.  DEVELUP was paid one Bitcoin; the equivalent of approximately $60,000, for their services, and delivered the initial version of the mobile apps for the RAIL NINJA COMPUTER PROGRAM in September 2023.

28.    The version of the apps Develup delivered were loaded with bugs, and Plaintiff relied on Adartovskiy to help Plaintiff SHIROKOV liaison with Develup to fix them.  However, at this time, ARDATOVSKIY had been coming into work only intermittently, and eventually stopped coming in altogether.  He offered to help Plaintiff fix the bugs in the Rail.Ninja mobile app for one Bitcoin, and Plaintiff declined.  From Plaintiff's perception, ARDATOVSKIY was having financial difficulties and needed to solve them, which Plaintiff assumed was the reason he was not coming into work and was asking for money, and those issues were distracting him from putting all his attention into the Project, so Plaintiff discharged him from the Project on October 30, 2023.

29.    ARDATOVSKIY invoiced Plaintiff SHIROKOV for his services on the Project, and was paid over 100,000 euros by Plaintiff for the work from March 2023 through October 2023.  Attached hereto and incorporated by reference herein collectively as <u>Exhibit 5</u> are true copies of the invoices and payments.

30.    By October 2023, ARDATOVSKIY had ceased working on the Project and had stopped coming to work, despite the need for further development, because the ARSIA GROUP was reporting multiple issues with the app and Defendant had ceased attendance at executive meetings, so the Plaintiff had no choice but terminate his services.

31.    Unbeknownst to Plaintiff at the time, and concurrently with the development of the Project, ARDATOVSKIY, BURLAKOV, NEX NOVA and DEVELUP were creating their own website and mobile app using the substantially similar design and code elements as a base.  This became evident from the following events:

        A. On May 15, 2023, the Railmonster.com domain name was registered anonymously with GoDaddy.com.  A true copy of the ownership record from "WHOIS" is attached hereto and incorporated by reference herein as <u>Exhibit 6</u>.

VERIFIED COMPLAINT

B. On September 28, 2023, the Railmonsters.com domain name was registered anonymously with GoDaddy.com.  A true copy of the ownership record from "WHOIS" is attached hereto and incorporated by reference herein as <u>Exhibit 7</u>.

C. On April 13, 2024, ARDATOVSKIY opened a UK limited company, Defendant NEXA NOVA TECHNOLOGIES, LTD. (NEXA NOVA), with principal owners ARDATOVSKIY (50%), VLADIMIR CHERNYATOVICH (20%), STEPAN BURLAKOV (20%), and two Swiss investors with 5% ownership apiece.  NEX NOVA is currently used by defendants to fund the operations and advertising of RAILMONSTERS.COM, which conceals its ownership from the public under the fictitious name, MONSTERS GROUP, a non-existent entity.

D. In May 2024, Defendants published the RAILMONSTERS mobile app in the Apple Store, under the owner name of Defendant DEVELUP.

E. In May 2024, Defendants published the RAILMONSTERS mobile app in the Google Play store under the Developer, INFINIUS INVESTMENTS, LTD.

F. On March 6, 2025, Defendant Nexa Nova filed a trademark application for "Rail Monsters" in the United States Patent and Trademark Office, alleging first use of the trademark on May 24, 2024, and first use in the United States on July 24, 2024, attaching as a specimen for the trademark a screenshot of the website, https://railmonsters.com (the "Railmonsters website").  A true copy of the application and specimen is attached hereto and incorporated by reference herein as <u>Exhibit 8</u>.

32.    Since December 2024, Defendants have unlawfully provided train ticket reservation and booking services to consumers in the United States and this Judicial District through the Railmonsters website and its mobile applications using copies of Plaintiff's copyrighted computer program. The designs, coding, layouts, images, buttons, and navigation menus are substantially similar to those of the Rail.Ninja app.  As can be seen from <u>Exhibit 9</u>, sourced from https://hosting-checker.net/websites/railmonsters.com, the Railmonsters website is based in the United States, and is

VERIFIED COMPLAINT

served through the servers of Cloudflare.com, which is owned by Cloudflare, Inc., with its principal headquarters in San Francisco, California.

33.     Upon information and belief, Defendants have, without authorization, copied the RAIL NINJA COMPUTER PROGRAM, and used it to develop the Railmonsters website and the Railmonsters Android and iOS mobile apps.  The following components of code were developed exclusively for the Rail.Ninja application and have been replicated in the Rail.monsters application without authorization. These duplicated components include key parts of the application, such as the entry point, services, storage management, navigation, UI components, and business logic:

a.  **Entry Point**: i. **src/App.js**: The entry point of the application. It initializes services, hides the SplashScreen (introductory visuals shown on launch of the application), and restores the application state. The code is entirely original.

b.  **Services**: These manage API requests, data storage, file handling, event management, geolocation, notifications, styling and validation:

i.  **src/services/http.js**: Custom method designed for configuring Client-Side Request (CSR) interactions. All backend requests are routed through this service. The implementation is completely unique.

ii.  **src/services/deviceStorage.js**: Manages custom interactions with device storage. The code is entirely original.

iii.  **src/services/downloadFile.js**: Handles file management within the application, including reading and writing to the device's file system. The service is uniquely developed.

iv.  **src/services/eventEmitters.js**: A tool for creating custom events. Despite its concise size, the approach is uncommon, with significant logic built around it, making it unique.

v.  **src/services/geolocation.js**: Facilitates geolocation functionalities within the application. This service is entirely original.

vi.  **src/services/notifications.js**: Configures push notifications in a consolidated manner, an approach rarely adopted due to its limited flexibility. The implementation is unique.

VERIFIED COMPLAINT

vii.  **src/services/useStyle.js**: Introduces a unique approach to handling styles within the application.

viii.  **src/services/useValidate.js and src/services/validation.js**: Both files contribute to the same functionality and are entirely original.

c.  **Store**:

i.  **src/store**: This directory encompasses the implementation of internal storage, including caching mechanisms, request handling, and data access. Noteworthy files, all uniquely developed, include: - **bookingStore.js - cartStore.js - countriesStore.js - currenciesStore.js - index.js - stationStore.js - tabBarStore.js - ticketOrderedStore.js**

d.  **Navigation**: **src/navigation**: Contains the implementation of the application's navigation stack. While not entirely unique, the implementation approach is notably unconventional.

e.  **Models**: **src/models**: Houses unique behavior models for data-driven pages. All files are original, with the following being particularly significant: - **Booking.js - CoachMedia.js - Countries.js - Currencies.js - OrderedTickets.js - StoreOrder.js - Timetable.js**

f.  **Hooks**:  **src/hooks**: Contains helper functions influencing both the UI and the application's internal logic. All files are unique, with the following standing out:

i.  **useAddPassengerButton.js**

ii.  **useAnimatedBackgroundPressable.js**

iii.  **useBooking.js**

iv.  **useDownload.js**

v**.  useDownloadPdfFileOnMount.js** (document downloading)

vi.  **useFetchFormMissingTravelers.js**

vii.  **useHideTabBarOnMount.js** (workaround for hiding the tab bar)

viii.  **useOnBackgroundCheckNotificationPermission.js**

ix.  **useOpenPDF.js**

x.  **useRecreatedBookTrainTicket.js**

xi.  **useSetAndSubscribePassengersForm.js**

VERIFIED COMPLAINT

xii.  **useShowTabBarOnMount.js** (workaround for displaying the tab bar)

xiii.  **useToggleNotifications.js**

ix.  **useValidatePassengerForm.js**

g.  **Higher-Order Components (HOCs): src/hocs/CustomModalWrapperHOC.js**: A crucial component wrapper for modal windows, utilizing an unconventional and unique solution.

h.  **Helpers**:

i.  **src/helpers**: Contains tools for the application. While some functionalities are common, these files are uniquely implemented:

ii.  **authTokenAndUserID.js**

iii.  **customError.js**

iv.  **datetime.js**

v.  **dimensions.js** (features an illogical scaling mechanism, rendering it unique) -

vi.  **Exceptions.js** (contains logic for request status handling with boolean output)

vii.  **rgba.js - scale.js**

i.  **Contexts**:  **src/contexts**: Both files within—index.js and ModalContext.js—are entirely original. This directory provides a provider for managing modal windows and its initializer, implementing large modal screens and mobile device behavior simulation.

j.  **Constants**: **src/constants**: The contents are entirely unique to the application. Certain files are notable for their specific implementation techniques:

i.  **badgeThemes.js**

ii.  **colors.js**

34.    Upon information and belief, Defendants have, without authorization, offered train reservation and booking services through RAILMONSTERS.COM and through its mobile apps that utilized Plaintiff's RAIL NINJA COMPUTER PROGRAM and are substantially similar to the designs, coding, layouts, designs, text, images, buttons, and navigation menus, including but not limited to the following:

A. **Substantially Similar Appearance and Function**: The Rail Ninja app and Rail Monster look almost the same, except for different colors and a few small design tweaks. This suggests they were built using the same code and same design principles. They also work in the same way—same speed, same user experience, and even the same bugs that were in the first version of the Rail Ninja app.

B. **Tab Bar Behavior**: The tab bar in both apps looks and works exactly the same as in Rail Ninja v1, including how it appears, disappears, and the order of the buttons.

C. **Ticket Refresh Logic**: Both apps refresh tickets the same way. Swiping on the "My Tickets" screen updates the ticket list, just like in Rail Ninja.

D. **Calendar**: The calendar in both apps looks identical, was developed with, and has nearly the same underlying code.

E. **Advanced Reservation:** Advanced reservation is available in both apps, even though it was originally a unique feature of Rail Ninja.

F. **OTP Login:** The one-time password (OTP) login works the same way in both apps.

35.   The substantial similarities of the two programs are evident in the following screen shots:

VERIFIED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



| Rail.Ninja Tab Bar | Rail.monsters Tab Bar |

VERIFIED COMPLAINT



| Rail.Ninja Calendar | Rail.monsters Calendar |

VERIFIED COMPLAINT



| Rail.Ninja Passenger Selector | Rail.monsters Passenger Selector |

VERIFIED COMPLAINT



| Rail. Ninja Flag Rendering | Rail.monsters Flag Rendering |

VERIFIED COMPLAINT



Rail.Ninja Timetable Loader | Rail.monsters Timetable Loader



| Rail.Ninja Tool Tip | Rail.monsters Tool Tip |

VERIFIED COMPLAINT



Rail.Ninja Coach Class Description | Rail.monsters Coach Class Description

VERIFIED COMPLAINT





Rail.Ninja Coach Class Description | Rail.monsters Coach Class Description

VERIFIED COMPLAINT



Rail.Ninja Carousel Gallery | Rail.monsters Carousel Gallery

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Rail.Ninja Carousel Gallery | Rail.monsters Carousel Gallery

VERIFIED COMPLAINT



| Rail.Ninja Carousel Gallery | Rail.monsters Carousel Gallery |

VERIFIED COMPLAINT



| Rail.Ninja Cart | Rail.monsters Cart |

VERIFIED COMPLAINT



| Rail.Ninja Ticket Cut Out | Rail.monsters Ticket Cut Out |

VERIFIED COMPLAINT



| Rail.Ninja Confirmation Email | Rail.monsters Confirmation Email |

36.    Defendant's RAIL MONSTERS as depicted in the above comparison infringes Plaintiff's copyright and has caused damage to Plaintiff.

37.    Upon information and belief, Defendants have consciously and in bad faith copied the Plaintiff's Work to gain a position in the marketplace that they would not otherwise have, as part of a transparent attempt to enhance their own business at Plaintiff's expense.

38.    Upon information and belief, Defendants have earned profits on their sales of the above-described infringing services. Likewise, upon information and belief, Plaintiffs have lost sales as a direct result of the sales of such infringing services by Defendants.

VERIFIED COMPLAINT

39.    After Defendants' infringing services were brought to Plaintiff's attention, Plaintiff submitted the following DMCA "takedown" notices under 17 U.S.C. § 512(c) to remove the infringing website and mobile apps of Defendants (hereinafter described as the "infringing services":

A.    On February 24, 2025, Plaintiff submitted a DMCA takedown notice to Cloudflare, Inc. on its Internet Takedown Notice Form. On February 24, 2025, Cloudflare responded that it had contacted Hetzner-AS, the server of the website in Europe, as it was a passthrough entity, and encouraged them to settle the dispute.  Attached hereto and incorporated by reference herein as <u>Exhibit 10</u> is a true copy of the email string.

B.    On February 24, 2025, Plaintiff submitted a DMCA takedown notice to Apple, Inc. on Apple's DMCA Internet Takedown Notice Form.  Apple served the notice on Defendant DEVELUP by email, which responded to the email, denying infringement.  A true copy of the email string is attached hereto and incorporated by reference as <u>Exhibit 11</u>.  On March 13, 2025, Apple responded that they could not act as an arbiter, and we would have to work with Develup to resolve any concerns Plaintiffs had.  A true copy of said response is attached hereto and incorporated by reference herein as <u>Exhibit 12</u>.

C.    On February 24, 2025, Plaintiff submitted a DMCA takedown notice to Alphabet, Inc. (Google) on Google's DMCA Takedown Internet Notice Form, to which Google responded asking for more information, which was supplied to it.  Attached hereto and incorporated by reference as <u>Exhibit 13</u> is a true copy of the email string.  To date, Google has not taken any action to remove the app from the Google Store.

D.    On March 3, 2025, Plaintiff submitted a DMCA takedown notice to Hetzner, AS by email, a true copy of which is attached hereto and incorporated by reference herein as <u>Exhibit 14</u>.

E.    On March 10, 2025, Hetzner responded, seeking further information, which Plaintiff's attorney supplied on March 10, 2025.  A true copy of the email string is attached hereto and incorporated by reference herein as <u>Exhibit 15</u>.

VERIFIED COMPLAINT

F.     On February 26, 2025, Plaintiffs' attorney sent a cease and desist letter to Defendants, demanding that they cease and desist the sale and marketing of the infringing services and provide a written response confirming their compliance.  A true copy of such cease and desist letter is attached hereto and incorporated herein as Exhibit 16.  On March 9, 2025, Defendants' attorney responded to the cease and desist letter, denying infringement.  A true copy of said response is attached hereto and incorporated by reference herein as Exhibit 17.  Plaintiffs' attorney responded to Defendants' attorney on March 10, 2025, a true copy of which is attached hereto and incorporated by reference herein as Exhibit 18.  Defendants' attorney sent a counter response on March 18, 2025, wherein he admitted Defendant Develup designed the Rail.Ninja mobile app for iOS and Android as well as the Railmonsters apps, and my client's loss of market share from Defendants' competition.  A true copy of said counter response is attached hereto and incorporated by reference herein as Exhibit 19.

## FIRST COUNT FOR COPYRIGHT INFRINGEMENT

### (By Plaintiff Vyacheslav Shirokov Against all Defendants)

40.     Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs 1 through 39 of the complaint, and incorporate the same by reference as though set forth in full herein.

41.     Plaintiff is, and at all times herein mentioned was, the owner of the exclusive rights to the RAIL.NINJA COMPUTER PROGRAM (hereinafter the "Work"), which includes the operational program for the website, https://rail.ninja and the Rail.Ninja mobile apps (hereinafter Rail.Ninja mobile app or mobile apps.

42.     Among the exclusive rights granted to Plaintiff under the Copyright Act is the exclusive right to use or to license the right to use the Work to others.

43.     Without Plaintiff's authorization, upon information and belief, Defendants have created or had others create designs and computer code that are substantially similar to those of Plaintiff's Work, and have offered such services online, including, upon information and belief, to residents of California

VERIFIED COMPLAINT

and in this District, through its website at https://railmonsters.com, (hereinafter "Railmonsters Website") served to United States consumers through Cloudflare's servers in this District, and its mobile apps for Android and iPhone, offered to United States consumers and consumers in this District, on the Google Play and Apple stores, respectively. Upon information and belief, the foregoing acts of infringement have been willful and intentional, with wanton disregard and indifference to the rights of Plaintiff.

44.     As a result of Defendants' infringement of Plaintiff's copyright and the exclusive rights embodied therein, Plaintiff is entitled to the recovery of his actual damages, together with an accounting of profits, or, alternatively, an award of statutory damages pursuant to 17 U.S.C. § 504, along with reasonable attorney's fees and costs, pursuant to 17 U.S.C. § 505.

45.     Defendants' conduct is causing and, unless enjoined by this Court, will continue to cause Plaintiff irreparable injury that cannot be fully compensated or measured through an award of monetary damages. Plaintiff has no adequate remedy at law and is entitled to injunctive relief pursuant to 17 U.S.C. §§ 502 and 503 prohibiting Defendants from further infringing Plaintiff's copyright and ordering Defendant to take down all forms the Work made in violation of Plaintiff's copyright.

### SECOND COUNT FOR UNFAIR COMPETITION

(Against All Defendants)

46.     Plaintiffs hereby repeat and reallege each and every allegation contained within paragraphs 1 through 39 of the complaint, and incorporates the same by reference as though set forth in full herein.

47.     By diverting confidential information, source code, and designs from the Rail Ninja Project to develop a competing product, RailMonsters.com, without Plaintiff's knowledge or consent, registering competing domains and launching a competing app and website, using the proprietary knowledge and materials obtained while performing under the agreements, and failing to return or destroy confidential information belonging to Plaintiff after terminating work on the Project, said Defendants have violated California Business and Professions Code § 17200, *et seq*., by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of the benefits of their intellectual property and trade secret protections.

48.    Defendants' conduct complained of herein, including, without limitation, unauthorized use of the Work in connection with competing Railmonsters.com services, and advertising those related goods/services, constitutes untrue and misleading advertising in violation of Bus. & Prof. Code, § 17500, and Defendants knew or reasonably should have known their advertising was untrue and misleading.

49.    As a direct, proximate and foreseeable result of the wrongful conduct of Defendants as herein alleged, Plaintiffs have been damaged and continue to suffer damages in a sum which is, as yet unascertained. Plaintiffs will seek leave of court to amend this complaint when the true nature and extent of their damages have been ascertained.

50.    While Plaintiffs will continue to suffer damages as a result of Defendants' conduct, monetary damages alone will not afford Plaintiffs relief. As such, Plaintiffs have no adequate remedy at law that will compensate for the continued and irreparable harm Plaintiffs have suffered and will continue to suffer if Defendants' conduct is allowed to continue.

51.    Plaintiffs are informed and believe and therefore allege that, unless enjoined and restrained by the Court, Defendants, and any persons participating with them, will continue to engage in unfair competition and unlawful conduct.

### THIRD COUNT FOR MISAPPROPRIATION OF TRADE SECRETS

(Against Defendant Yan Ardatovskiy, Defendant Develup Private Enterprise,

and Defendant Vladimir Chernyatovich)

52.    Plaintiffs hereby repeat and reallege each and every allegation contained within paragraphs 1 through 39 of the complaint, and incorporate the same by reference as though set forth in full herein.

53.    Plaintiff is the owner of confidential and proprietary business information, including but not limited to the structure, source code, algorithms, internal databases, customer data, design elements, and functionality of the RAIL NINJA COMPUTER PROGRAM  and Rail.Ninja website; and know-how, advertising strategy, and satellite website strategy (the "Trade Secrets").

54.    Plaintiff took reasonable measures to protect the confidentiality of these Trade Secrets, including but not limited to restricting access to authorized personnel, requiring non-disclosure

VERIFIED COMPLAINT

agreements, and limiting public exposure of the proprietary software and business processes, and derives independent value from the Trade Secrets not being generally known to, and not being readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the Trade Secrets.

55.    Plaintiff's Trade Secrets were licensed to his businesses and used by them to position themselves as leading online providers of train tickets worldwide.

56.    As a former contractor of Plaintiff, Defendant YAN ARDATOVSKIY, in his capacity as Project Manager for the development of the Rail Ninja mobile app, was granted access to these Trade Secrets under the terms of a non-disclosure agreement signed on March 1, 2023 and a subsequent agreement between Plaintiff and Defendant DEVELUP PRIVATE ENTERPRISE, and these Defendants knew that, during their employment and thereafter, they were obliged to keep those Trade Secrets and other confidential information secret and not disclose such information to third parties.

57.    Defendant DEVELUP PRIVATE ENTERPRISE, through ARDATOVSKIY and its principal owner, Defendant VLADIMIR CHERNYATOVICH, had access to Plaintiffs' Trade Secrets and proprietary software and business data while working on the Project and the Railmonsters website.

58.    Defendants misappropriated Plaintiffs' Trade Secrets by:

    A.  Using the Plaintiffs' customer data, internal databases, know-how, advertising strategy, satellite website strategy, and  confidential source code, software structure, customer data, internal databases and design elements from the Work to develop a competing platform, RailMonsters.com, without Plaintiff's authorization.

    B.  Copying key functionalities, user interface elements, ticketing logic, and reservation processes from the Work into Rail Monsters, as evidenced by the nearly identical structure and function of both applications.

    C.  Retaining and utilizing proprietary software and confidential business data after ceasing work on the Project and diverting them for use in a competing business.

    D.  Disclosing confidential information to third parties in furtherance of the development and launch of the RailMonsters.com business and its mobile applications.

59.     Notwithstanding their departure from Plaintiff's contract employment, Defendants have a continuing duty to maintain the secrecy of the Plaintiff's Trade Secrets and not disclose that information to third parties or the public, including competitors of Plaintiffs or for Defendants' own enrichment. Defendants also have a continuing duty to return or otherwise destroy Plaintiff's Trade Secrets.

60.     Defendants' conduct constitutes misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq*.

61.     Defendants took such actions willfully, maliciously, and/or in reckless disregard for the Plaintiffs' rights, in that Defendants knew or had reason to know that they were not authorized to use or disclose the Plaintiff's Trade Secrets in competition with the Plaintiffs' businesses or for Defendants' own financial benefit.

62.     As a direct and proximate result of Defendants' misappropriation, Plaintiff has suffered significant damages, including loss of exclusive control over proprietary business information, financial harm from diverted business opportunities, and competitive disadvantage in the market.

63.     As a result of Defendants' misappropriation of the Plaintiffs' Trade Secrets, Plaintiff has suffered and will continue to suffer actual damages, and/or Defendants have been unjustly enriched in an amount to be determined at trial. If Defendants' use of the Plaintiffs' Trade Secrets is not enjoined, Plaintiffs will continue to suffer irreparable harm.

64.     Plaintiffs further seek exemplary damages and attorney's fees as permitted under the Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3), due to Defendants' willful and malicious misappropriation.

### FOURTH COUNT FOR FEDERAL TRADE DRESS INFRINGEMENT

(By Plaintiff FIREBIRD GT LIMITED Against all Defendants)

65.     Plaintiff hereby repeats and realleges each and every allegation contained within paragraphs 1 through 39 as if set forth in full herein.

66.     Since 2016, Plaintiff has extensively and continuously used unique, non-functional designs as source identifiers of its products and holds extensive trade dress and other intellectual property rights relating thereto.

67.     Plaintiff has trade dress rights in the overall look and appearance of the Rail.Ninja website, including, but not limited to, the design, coloration, layout, and font (hereinafter the "Rail.Ninja Trade Dress").

68.     The Rail.Ninja Trade Dress is non-functional.

69.     Plaintiff has invested substantial effort and resources into developing and promoting Rail.Ninja and the Rail.Ninja Trade Dress.

70.     Through Plaintiff's consistent and extensive use of the Rail.Ninja Trade Dress, its design has become an indicator of the origin and quality of Plaintiff's services.

71.     Plaintiff has had significant sales of train tickets throughout the United States, including sales to customers in the State of California and in this Judicial District.

72.     Consequently, the Rail.Ninja Trade Dress represents a valuable asset for Plaintiff.

73.     With full knowledge of Plaintiff's ownership and use of the Rail.Ninja Trade Dress, Defendants copied and used elements of the Rail.Ninja Trade Dress on and in connection with their Railmonsters.com website and services.

74.     Defendant primarily sells train tickets via its Railmonsters website and its mobile apps, which also bear a remarkable similarity to the Rail.Ninja Trade Dress.

75.     As shown by the comparison above, Defendant's trade dress bears a nearly identical look and feel, wording, information, font, and marketing strategy to Rail.Ninja.

76.     Defendant sells Defendant's services to customers located throughout the United States and its territories, including California and, upon information and belief, in this Judicial District.

77.     The foregoing acts have occurred in interstate commerce and in a manner affecting interstate commerce, including, upon information and belief, in this Judicial District.

VERIFIED COMPLAINT

78.     Defendant has relied, and will continue to rely, on Plaintiff's existing goodwill, consumer recognition, and marketing, promotion, and advertising of Rail.Ninja services so that Defendant can enhance the sales of Defendant's services.

79.     Plaintiff has not authorized, licensed or otherwise condoned or consented in any way to Defendant's use of the Rail.Ninja Dress.

80.     Plaintiff has no control over the nature, quality or pricing of the services provided by Defendant using the Rail.Ninja Trade Dress.

81.     Defendant's use of the Rail.Ninja Trade Dress in connection with competing train ticket sales is likely to cause consumer confusion as to the source or affiliation of those products and, upon information and belief, Plaintiff avers that actual confusion has already occurred.

82.     Defendant's conduct complained of herein has been done and is done with the intent to cause confusion, mistake or deception as to the source or affiliation of the parties' respective services.

83.     Defendant has misappropriated Plaintiff's substantial property rights in the Rail.Ninja Trade Dress, as well as the substantial goodwill associated therewith.  Unless restrained and enjoined by this Court, such conduct will permit Defendant to gain an unfair competitive advantage over Plaintiff, permit Defendant to enjoy the public interest in and marketing power of the Rail.Ninja Trade Dress, and cause substantial harm to unsuspecting consumers who are likely to purchase Defendant's services, believing Defendant's services originate from or is associated with Rail.Ninja.

84.     Further, if Defendant is permitted to continue using, promoting, marketing, advertising, distributing and selling Defendant's services using the Rail.Ninja Trade Dress, its actions will continue to cause irreparable injury to Plaintiff, to the distinctiveness of the Rail.Ninja Trade Dress, and to the goodwill and business reputation associated with the Rail.Ninja Dress.

85.     The Rail.Ninja Trade Dress is unique and distinctive as to the source of the Rail.Ninja services and consumers associate Rail.Ninja as the source of goods provided under the Rail.Ninja Trade Dress.  The Rail.Ninja Trade Dress is entitled to protection under both federal and common law.

86.     Defendant's use in commerce of the Rail.Ninja Trade Dress to advertise, market, promote, distribute, offer for sale, and/or sell Defendant's services, without Plaintiff's consent, is likely to cause

VERIFIED COMPLAINT

confusion, cause mistake, and/or deceive consumers into mistakenly believing that Defendant is Rail.Ninja, or is a licensee, authorized distributor, or affiliate of Rail.Ninja, or that Defendant, its activities, and/or Defendant's Product, are authorized, endorsed, sponsored, or approved by Rail.Ninja, or vice versa.

87.    Defendant has made, and will continue to make, substantial profits and gain from its unauthorized use of the Rail.Ninja Trade Dress to which it is not entitled in law or equity.

88.    The acts of Defendants herein alleged in paragraphs above were intentional, willful, with bad faith, and were committed with the intention of deceiving and misleading the public and causing harm to Plaintiff, and made with the full knowledge of Plaintiff's trade dress rights.

89.    Defendants' acts and conduct complained of herein constitute federal trade dress infringement in violation of 15 U.S.C. § 1125(a).

90.    Plaintiff has suffered, and will continue to suffer, irreparable harm from Defendants' unauthorized use of the Rail.Ninja Trade Dress unless restrained by law.

91.    As a direct and proximate result of Defendant's infringing and unlawful acts, Plaintiff has suffered and will continue to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

## **PRAYER**

**WHEREFORE,** Plaintiffs pray for relief as follows:

1.    Awarding Plaintiffs actual damages for each infringement of his copyright in such amount as may be found;

2.    Ordering Defendants to make an accounting of, and imposing a constructive trust with respect to, Defendants' profits attributable to its infringements of the copyright in the Plaintiffs' name;

3.    Awarding Plaintiff statutory damages on his claim for infringement of his copyright in such amount as may be found, as permitted by 17 U.S.C. § 504;

4.    Preliminarily and permanently enjoining Defendants, their agents, servants, companies, affiliates, employees and attorneys, and those persons in active concert or participation

with them, or any of them, from continuing to infringe on the copyright in the Plaintiffs' Work;

5. For preliminary and permanent injunctive relief that orders, enjoins, and restrains Defendants and all persons acting in concert or participation with Defendants as follows:

    a. Prohibiting the use, disclosure, transmission, or continued possession for any purpose of the Plaintiffs' Trade Secrets or confidential information;

    b. Compelling the return to the Plaintiffs, or destruction, of any and all records, information, and/or documents in any form, received or removed from the Plaintiffs by Defendants, including all copies, within ten (10) days from the entry of the Court's order;

    c. Prohibiting the interference with the Plaintiffs' contracts and/or economic relationships, actual or prospective.

    d. Prohibiting the solicitation or contacting of the Plaintiffs' customers, partners, or other third parties with which the Plaintiffs have an actual or prospective contract or economic relationship;

    e. Prohibiting the publication, whether oral or in writing, of untrue statements about the Plaintiffs to any third parties;

    f. Prohibiting any further breach of the duty of loyalty or other contractual or common law duties owed to Plaintiffs;

6. For an order requiring Defendants to account for all gains, profits, and advantages derived from misappropriation of the Plaintiffs' Trade Secrets and confidential information;

7. For an order requiring Defendants to disgorge all profits earned from their unlawful conduct;

8. An Order, pursuant to 17 U.S.C. § 502, preliminarily and permanently enjoining and restraining Defendants, their subsidiaries, divisions, branches, affiliates, predecessors or successors in business, parents, and wholly-owned or partially-owned entities of the parties, and any entities acting or purporting to act for or on behalf of the foregoing,

VERIFIED COMPLAINT

including any agents, employees, representatives, officers, directors, servants, partners, and those persons in active concert or participation with them, from manufacturing, distributing, licensing, using, copying, reproducing, displaying, adapting, offering for sale, and/or selling any product (including, but not limited to, Defendant's Services) that infringes the Rail.Ninja Trade Dress;

9.   An Order permanently enjoining and restraining Defendant, its subsidiaries, divisions, branches, affiliates, predecessors or successors in business, parents, and wholly-owned or partially-owned entities of the parties, and any entities acting or purporting to act for or on behalf of the foregoing, including any agents, employees, representatives, officers, directors, servants, partners, and those persons in active concert or participation with them, from engaging in any act of unfair competition utilizing any trade dress that is identical or confusingly similar to the Rail.Ninja Trade Dress;

10.   An Order directing Defendants to remove and discontinue using the Rail.Ninja Dress, or any colorable imitation(s) thereof, from and in connection with all of Defendants' services, as well as from any websites or promotional materials, whether electronic, printed or otherwise, under Defendants' direct or indirect dominion and control;

11.   An Order, pursuant to 15 U.S.C. § 1118, directing the seizure, delivery, and destruction of each good within Defendants' possession, custody, and control that infringes Plaintiffs' exclusive rights in and to the Rail.Ninja Trade Dress;

12.   An Order that any Third Party Providers, including Stripe, PayPal, Alipay, Alibaba, Ant Financial, Wish.com, and Amazon Pay, shall, within seven (7) calendar days of receipt of this Order:

a.   locate all accounts and funds connected to Defendants' seller aliases, including, but not limited to, any financial accounts connected to the Defendants hereto;

b.   restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further order by this Court.

VERIFIED COMPLAINT

13. An Order directing Defendants, pursuant to 15 U.S.C. § 1116(a), to file with the Court and serve on Plaintiffs' counsel within thirty (30) days after service of the injunction, a written report, sworn under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

14. An Order directing an accounting to determine Defendants' profits resulting from their unlawful activities;

15. An Order awarding Plaintiffs compensation for any and all damages, injury or harm pursuant to 15 U.S.C. § 1117;

16. An Order directing Defendants to pay, jointly and severally, full restitution and/or disgorgement of all profits, including any lost profits, and benefits that may have been obtained by Defendants as a result of their wrongful conduct pursuant to 15 U.S.C. § 1117;

17. An Order awarding Plaintiffs treble damages resulting from Defendants' willful and intentional conduct pursuant to 15 U.S.C. § 1117;

18. For damages according to proof;

19. For punitive and exemplary damages according to proof;

20. For costs of suit and reasonable attorney's fees; and

21. For such other and further relief as the Court may deem just and proper.


I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document.


DATED:  March 20, 2025

/s/ Michael S. Brandt
MICHAEL S. BRANDT
Attorney for Plaintiffs

VERIFIED COMPLAINT

1

2

## **VERIFICATION**

3       I, VYACHESLAV SHIROKOV, hereby declare as follows:

4       I am an individual plaintiff and the sole shareholder of FIREBIRD GT LIMITED in this matter.  I

5 have read the forgoing complaint and know the contents thereof.  The matters stated in it are true of my

6 own knowledge except as to those matters which are stated on information and belief, and as to those

7 matters I believe them to be true.

8       Executed this 21st day of March 2025 at Monaco.

9       I declare under penalty of perjury under the laws of the United States of America that the foregoing

10 is true and correct.

11

12

13            /s/ Vyacheslav Shirokov
       _____
       VYACHESLAV SHIROKOV

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VERIFIED COMPLAINT