# EXHIBIT 2

**THIS CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT** (the "Agreement") is made on 01 March 2023 and effective as of 01 March 2023 by and between:

(1)     **Firebird GT Limited**, a limited liability company, duly registered and validly existing under the laws of Hong Kong, having its registered office at Unit 2003, 20/F, Tower 5, 33 Canton Rd, Tsim Sha Tsui, Hong Kong, registration number 1885055, Tax ID: 1885055 ("**FGT**"),

(2)     **Arsia Limited**, a limited liability company, duly registered and validly existing under the laws of the Republic of Cyprus, having its registered office at 3 Omirou Street, 2nd Floor, Office 201, 1097 Nicosia, Cyprus, registration number HE 382394 ("**ACY**"),

(3)     **Arsia AG**, a public limited company, duly registered and validly existing under the laws of Switzerland, having its registered office at Neugasse, 23, Zug 6300, Switzerland, registration number 1334957 ("**AAG**");

(4)     **Arsia Limited**, a limited liability company, duly registered and validly existing under the laws of Malta, having its registered office at 12, Tigne Place, Office 2/4b, Tigne Street, Sliema, Malta, registration number C81880 ("**AMT**") and

(5)     **Yan Ardatovskiy**, a holder of residence permit of France number 3703019220, expiring on 28.09.2023, with residential address at 11 av de la Torraca, 06190, Roquebrune Cap Martin France (the "**Receiving Party**").

FGT, ACY, AAG and AMT and the Receiving Party are collectively referred to herein as the "**Parties**" and individually as a "**Party**".

FGT, ACY, AAG and AMT are collectively referred to herein as "**Disclosing Parties**".

**WHEREAS**

The Receiving Party has agreed to provide to Disclosing Parties certain services (the "Services") and the Parties will exchange certain Confidential Information (as defined below) in connection with the Services and solely for its purpose (the "Purpose").

**IT IS AGREED AS FOLLOWS**

1.     **MUTUAL EXCHANGE OF UNDERTAKINGS**

1.1     Each Party further agrees, in consideration of the mutual disclosure and exchange of the Confidential Information, to comply with the confidentiality undertakings set out in clauses 2 and 3 below and to comply with all other provisions of this Agreement.

2.     **CONFIDENTIALITY**

2.1     For the purposes of this Agreement confidential information (the "Confidential Information") means, except as otherwise provided in clause 2.3, all information (however recorded or preserved) disclosed by or exchanged between the Parties in connection with the Services after the date of this Agreement including but not limited to:

(a) technical information concerning the Disclosing Parties products and services, including product know-how, formulas, designs, devices, diagrams, software code, test results, processes, inventions, research projects and product development, technical memoranda and correspondence;

(b) information concerning the Disclosing Parties business, including cost information, profits, sales information, accounting and unpublished financial information, business plans, markets and marketing methods, customer lists and customer information, purchasing techniques, supplier lists and supplier information and advertising strategies;

(c) information concerning the Disclosing Parties contractors, including salaries, strengths, weaknesses and skills;

(d) information submitted by the Disclosing Parties customers, suppliers, contractors, or co-venture partners with the Disclosing Parties for study, evaluation or use;

(e) any other information not generally known to the public which, if misused or disclosed, could reasonably be expected to adversely affect the Disclosing Parties business;

(f) the fact that discussions and negotiations of the Services are taking place as well as the purpose and the status of those discussions and negotiations;

(g) the existence and terms of this Agreement;

(h) any information provided by the Disclosing Parties with respect to its business and affairs; and

(i) any information or analysis derived from the Confidential Information.

2.2     The Receiving Party to whom Confidential Information is furnished by another Party (the Disclosing Parties) shall keep the Confidential Information strictly confidential and, except with the prior written consent of the Disclosing Parties or unless otherwise provided in clauses 2.4 and 2.6, shall not, and shall ensure that its Representatives (as defined below) shall not:

a)      use or exploit the Confidential Information in any way except for the Purpose; or

b)      disclose or make available such Confidential Information in whole or in part to any third party, except as expressly permitted by this Agreement; or

c) copy, reduce to writing or otherwise record the Confidential Information, except as necessary for the Purpose.

For the purpose of this Agreement, (i) the "Representatives" means, in relation to each Party separately, its respective directors, officers, key managers, employees, agents and professional advisers, its Group (as defined below) and its beneficial owners and (ii) the "Group" means in relation to an undertaking, that undertaking and each and any subsidiary undertaking or parent undertaking) from time to time of that undertaking, and each and any subsidiary undertaking from time to time of a parent undertaking of that undertaking.

2.3   Confidential Information shall not include any information that:

a) is, or becomes, generally available to the public (other than as a result of disclosure by the Receiving Party or any of its Representatives in breach of this Agreement); or

b) was available to the Receiving Party on a non-confidential basis before disclosure by the Disclosing Parties; or

c) was, is or becomes available to the Receiving Party on a non-confidential basis from a person who, to the knowledge of the Receiving Party, is not bound by a confidentiality agreement with the Disclosing Parties, or otherwise prohibited from disclosing the information to the Receiving Party; or

d) was lawfully in the possession of the Receiving Party before the information was disclosed to it by the Disclosing Parties; or

e) the Parties agree in writing is not confidential or may be disclosed; or

f) is developed by or for the Receiving Party, independently of the information disclosed by the Disclosing Parties.

2.4   The Receiving Party may disclose the Confidential Information of the Disclosing Parties to its Representatives for the Purpose, provided that such Representatives are required to keep that information strictly confidential.

2.5   The Receiving Party may disclose Confidential Information to the extent such Confidential Information is required to be disclosed by the laws or regulations of any country with jurisdiction over the Receiving Party or by any governmental or other regulatory authority or by a court or other authority of competent jurisdiction. However, to the extent it is legally allowed to do so, it must give the Disclosing Parties as much notice of that disclosure as possible and consult with the other Parties as to possible steps to avoid or limit disclosure and take those steps where they would not result in significant adverse consequences for the Disclosing Parties.

2.6    If the Receiving Party is required to provide documents or information to any governmental or other regulatory authority, but due to short notice or absence of such notice from an authority, is unable to provide the notice referred to in clause 2.5 to the other Parties before Confidential Information is disclosed, it shall (to the extent permitted by law) inform the other Parties immediately after the disclosure of the full circumstances of the disclosure and the information that has been disclosed.

2.7    Confidential Information and all rights therein and thereto are and shall at all times remain the exclusive property of the Disclosing Parties and shall be at all times held by the Receiving Party in trust for the Disclosing Parties.

2.8    The Receiving Party shall keep, maintain and protect all Confidential Information in strict secrecy and shall not, directly or indirectly, commercially exploit any Confidential Information or otherwise use it for any purpose except for the intended Purpose.

3.    **RETURN OF INFORMATION**

3.1    At the reasonable request of the Disclosing Parties, the Receiving Party shall destroy and/or return to the Disclosing Parties all Confidential Information provided by the Disclosing Parties and all materials containing, or making use of, the Confidential Information and any copy which may have been made, and take reasonable steps to expunge all Confidential Information from any computer, word processor or other device containing Confidential Information.

3.2    At the reasonable request of the Disclosing Parties, the Receiving Party will certify the destruction of the Confidential Information in writing by a Representative supervising it. The undertakings in this clause shall not apply to the Confidential Information which the Receiving Party or its Representatives must retain under any applicable law, rule or regulation, including the rules of a professional body.

4.    **REMEDIES**

4.1    Without affecting any other rights or remedies which the Parties under this Agreement may have, each Party acknowledges that a person with rights under this Agreement may be irreparably harmed by any breach of its terms and that damages alone may not necessarily be an adequate remedy. Accordingly, a person bringing a claim under this Agreement will be entitled, in addition to damages for losses, costs and expenses, to the remedies of injunction, specific performance and other equitable relief, or any combination of these remedies, for any threatened or actual breach of its terms, and no proof of special damages will be necessary to enforce this Agreement.

4.2    Any misappropriation of any of the Confidential Information in violation of this Agreement may cause the Disclosing Parties irreparable harm, the amount of which may be difficult to ascertain, and therefore The Receiving Party agrees that the Disclosing Parties shall have the right to apply to a court of competent jurisdiction for an order enjoining any such further

misappropriation and for such other relief as the Disclosing Parties deems appropriate. This right is to be in addition to the remedies otherwise available to the Disclosing Parties.

4.3     The Receiving Party agrees to indemnify the Disclosing Parties against any and all losses, damages, claims or expenses incurred or suffered by The Disclosing Parties as a result of the Receiving Party's breach of this Agreement.

## 5. WARRANTIES

5.1     Each Party represents and warrants to the other Party that:

a)      such Party is duly formed under the laws of its jurisdiction of formation (in case of legal entities). Such Party has all requisite power and authority to execute, deliver and perform its obligations under this Agreement; and

b)      the execution and delivery of this Agreement by such Party has been duly authorized. This Agreement constitutes legal, valid and binding obligations of such Party, enforceable in accordance with their terms.

## 6. ACKNOWLEDGEMENT AND ANNOUNCEMENTS

6.1     The Parties agree that entering into this Agreement and disclosing and receiving Confidential Information will not commit any Party to enter into any further contract in connection with the Purpose, or any other product or service to which the Confidential Information relates.

6.2     No Party shall make, or allow any person to make, any public announcement about this Agreement without the prior written consent (such consent not to be unreasonably withheld or delayed) of the other Party, except and to the extent as required by the laws or regulations of any country with jurisdiction over the Receiving Party or by any governmental or other regulatory authority or by a court or other authority of competent jurisdiction.

## 7. TERM AND TERMINATION

7.1     The Parties acknowledge and agree that the undertakings set out in this Agreement will survive completion of their negotiations, whether or not the Services is implemented, and shall continue for five (5) years from the date of this Agreement.

7.2     Termination of this Agreement shall not affect any accrued rights or remedies to which the respective Party or Parties are entitled.

## 8. NOTICES

8.1     Any notice or other communication required to be given under this Agreement (a "Notice") shall be in writing, signed by or on behalf of the Party giving it and shall be delivered (i)

personally; or (ii) sent by commercial courier to each Party required to receive the notice at its address as set out above.

8.2   In the absence of evidence of earlier receipt, any Notice served in accordance with clause 8.1 shall be deemed given and received at the time of delivery at the address referred to in clause 8.1. For the purposes of this clause 8.2, (i) all times are to be read as local time in the place of deemed receipt; and (ii) if deemed receipt under this clause 8.2 is not within business hours (meaning 9.00 a.m. to 5.30 p.m. Monday to Friday on a day that is not a public holiday in the place of receipt), the Notice is deemed to have been received at 10.00 a.m. on the next day that is not a public holiday in the place of receipt.

8.3   Any Party may notify the other Parties of any change to its name or address for the purpose of this clause 8, or as otherwise specified by the relevant Party by Notice in writing to each of the other Parties and such Notice shall be effective on (i) the date specified in the notice as the date on which the change is to take effect; or (ii) if no date is so specified or the date specified is less than three business days after which such notice was given (or deemed to be given), the fourth business day after the notice was given or deemed to be given.

8.4   This clause 8 shall not apply to the service of, or any step in, any proceeding, suit or action arising out of or in connection with this Agreement or its subject matter.

9.   **GOVERNING LAW AND JURISDICTION**

9.1   This Agreement and any dispute, controversy or claim arising out of, or in connection with, its subject matter (including any non-contractual claims arising) and the relationship of the Parties shall be governed by and interpreted in accordance with the laws of the Republic of Cyprus.

9.2   Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by the courts of the Republic of Cyprus.

10.   **MISCELLANEOUS**

10.1   This Agreement constitutes the entire agreement between the Parties and supersedes and extinguishes all previous drafts, agreements, arrangements and understandings between them, whether written or oral, relating to the Purpose.

10.2   If any provision of this Agreement is held to be invalid, illegal or unenforceable, that provision shall (only so far as it is invalid, illegal or unenforceable) be given no effect and shall be deemed not to be included in this Agreement, but without invalidating any of the remaining provisions.

10.3  Unless otherwise specified, all costs in connection with the negotiation, preparation, execution and performance of this Agreement (and any documents referred to in it) and the consideration or evaluation of the Confidential Information shall be borne by the Party that incurred the costs.

10.4  No Party may assign, subcontract or deal in any way with any of its rights or obligations under this Agreement or any document referred to in it without the prior written consent of the other Parties.

10.5  Nothing in this Agreement is intended to, or shall be deemed to, establish any partnership or joint venture between any of the Parties, constitute any Party the agent of another Party, or authorize any Party to make or enter into any commitments for, or on behalf of, any other Parties.

10.6  This Agreement may be executed in any number of counterparts, and by each Party on separate counterparts. Each counterpart is an original, but all counterparts shall together constitute one and the same instrument.

10.7  A variation of this Agreement shall be in writing and signed by or on behalf of all Parties.

10.8  The Parties agree that an electronic copy of this Agreement and any variation of it, including any electronically transmitted or stored version, shall be deemed an original and have the same legal effect as a document bearing original signatures. The Parties acknowledge and agree that the use of electronic copies facilitates the efficient and expeditious exchange of information and hereby waive any right to object to the admissibility or authenticity of this Agreement based solely on the electronic form or lack of original signatures.

10.9  A waiver of any right under this Agreement is only effective if it is in writing and it applies only to the person to whom the waiver is addressed and the circumstances for which it is given. A person that waives a right in relation to one person, or who takes or fails to take any action against that person, does not affect its rights against any other person.

10.10  No failure to exercise or delay in exercising any right or remedy provided under this Agreement or by law constitutes a waiver of such right or remedy or will prevent any future exercise in whole or in part thereof.

10.11  No single or partial exercise of any right or remedy under this Agreement shall preclude or restrict the further exercise of any such right or remedy. Rights arising under this Agreement are cumulative and do not exclude rights provided by law.

[signature page follows]

AS WITNESS WHEREOF the Parties or their duly authorized representatives have executed this Agreement on the day and year first above written in as many counterparts as there are Parties.

(1) **Firebird GT Limited**

_____
Duly represented by
Name: Vyacheslav Shirokov
Title: Director


(2) **Arsia Limited**

_____
Duly represented by
Name: Vyacheslav Shirokov
Title: Director


(3) **Arsia AG**

_____                    _____
Duly represented by                           Duly represented by
Name: Vyacheslav Shirokov                     Name: Justas Jurkuvenas
Title: President of the Board of Directors    Title: Member of the Board of Directors


(4) **Arsia Limited**

_____
Duly represented by
Name: Vyacheslav Shirokov
Title: Director


(5) **Yan Ardatovskiy**

_____