UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VYACHESLAV SHIROKOV, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>YAN ARDATOVSKIY, et al.,<br><br>Defendants. | Case No. 25-cv-02701-EMC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS; AND FINDING PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY MOOT**<br><br>Docket Nos. 26, 57 |

Plaintiffs are an individual and company who own or operate the Rail Ninja website/mobile app. The website has been operating since 2016 and is used to book train tickets all over the world. Plaintiffs have sued several individuals and companies claiming, among other things, misappropriation of trade secrets.[1] According to the complaint, Plaintiffs hired one of the individual defendants to help improve the website and to develop the mobile app but then that individual, along with others, subsequently set up a competing business known as Rail Monsters. *See* Compl. ¶¶ 19, 23. In addition to misappropriation of trade secrets, Plaintiffs claim that Defendants have infringed on Plaintiffs' copyrights (software and design) and trade dress and engaged in unfair competition. *See* Compl. ¶ 31.

Now pending before the Court are two motions: (1) Defendants' motion to dismiss for lack of personal jurisdiction and (2) Plaintiffs' motion for expedited discovery. Having considered the briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby

---

[1] Specifically, Defendants are: (1) Yan Ardatovskiy; (2) Develup Private Enterprise; (3) Stepan Burlakov; (4) Nexa Nova Technologies, Ltd.; (5) ddsters.com; (6) Infinius Investments Ltd.; and (7) Vladimir Chernyatovich.

**DENIES** Defendants' motion to dismiss. Plaintiffs' motion for expedited discovery is moot.

## I.     DISCUSSION

A.     Motion to Dismiss for Lack of Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may move to dismiss for a lack of personal jurisdiction.

> In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. The plaintiff cannot "simply rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true.

*Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011).

In the instant case, the parties agree that the question is whether Plaintiffs have established a prima facie case of specific jurisdiction. Plaintiffs make no contention that there is general jurisdiction. For specific jurisdiction, there is a three-part test:

> (1)     The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)     the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)     the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Briskin v. Shopify, Inc.*, 135 F.4th 739, 750-51 (9th Cir. 2025) (en banc). The plaintiff bears the burden of satisfying the first two prongs; if the plaintiff succeeds, then the burden shifts to the defendant "'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* at 751.

The parties agree that, in the instant case, the first and third prongs are the most significant. They also agree that, for the first prong, the analysis turns on what contacts have been had with the United States. *See* Fed. R. Civ. P. 4(k)(2) ("For a claim that arises under federal law, serving a

1  summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the
2  defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B)
3  exercising jurisdiction is consistent with the United States Constitution and laws."); *Pebble Beach*
4  *Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006) ("Rule 4(k)(2) may, in limited circumstances,
5  be a basis for establishing jurisdiction where 'the United States serves as the relevant forum for a
6  minimum contacts analysis.'"). Finally, because Plaintiffs have stated that they intend to file an
7  amended complaint in which they will drop the individual defendants from the case (*i.e.*, leaving
8  only the entity defendants in the case), the Court considers only the contacts that the entity
9  defendants have with the United States.[2]

10  The Court holds that, for the first prong of the specific jurisdiction test, Plaintiffs have
11  established a prima facie case that the entity defendants purposefully directed activities at the
12  United States. *See Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090 (9th Cir. 2023)
13  (noting that a purposeful direction analysis is used for suits sounding in tort). In this regard, the
14  Court takes into account recent Ninth Circuit authority on specific jurisdiction, in particular,
15  *Herbal Brands* and *Briskin* (an en banc decision). Under these cases, the fact that the entity
16  defendants may not have specifically targeted the United States because they operate globally and
17  make worldwide sales and the fact that the proportion of the U.S. customer segment is relatively
18  small – at least in terms of percentages – is not highly consequential. *See Briskin*, 135 F.4th at
19  757 (finding specific jurisdiction even though only 8% of Shopify's worldwide merchants were
20  located in California); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 974, 977 (9th Cir. 2021) (finding
21  specific jurisdiction even though less that 10% of defendant's sales were shipped to the United
22  States); *see also id.* at 981 (noting that, in the Supreme Court's *Keeton* decision, the defendant's
23  circulation of its magazine in New Hampshire was less than 1% of its total circulation in the
24  United States). "[A]n interactive platform 'expressly aims' its wrongful conduct toward [the
25  United States] when its contacts are its own choice' and not "random, isolated, or fortuitous,"'
26  even if that platform cultivates a '[global] audience[] for commercial gain." *Briskin*, 135 F.4th at

---

[2] Plaintiffs have represented that they will also amend by dropping the claim for trade dress infringement from the case.

3

758. The purposeful direction test is no longer contingent on whether the defendant engaged in activities that focused on the forum. *See id.* at 757 (stating that rationale from prior case law "*requiring* a 'forum-specific focus' or 'differential targeting,' as the concept has been more recently described, is incorrect, and we now overrule it") (emphasis added). It is sufficient if there are regular sales in the forum and the defendant exercise control over the distribution. *See, e.g.*, *Herbal Brands*, 72 F.4th at 1094-95 (noting that "Defendants exercised control over distribution" because "they created and maintained a distribution network that reached the relevant forum by choosing to operate on a universally accessible website that accepts orders from residents of all fifty states and delivers products to all fifty states").

Such is the case here. Defendants made regular sales to U.S. customers. The data, conservatively viewed, show somewhere between 5-8% of their sales involved U.S. customers. U.S. sales were not "random, isolated, or fortuitous."

Moreover, although the entity defendants may have a worldwide business, they are not agnostic to the U.S. market. Indeed, they made a conscious effort to gain U.S. customers, as demonstrated by the fact that they have made the Rail Monsters website/app accessible to the United States and have included U.S. consumers as an audience through their use of Google Ads which were targeted to the United States. Thus, there was at least some direct targeting of the U.S. market. Certainly, the record establishes that its U.S. sales were not "random, isolated, or fortuitous." They were purposeful, planned, and systematic.

As for the third prong of the specific jurisdiction test, once the first two prongs are satisfied, the entity defendants have the burden of establishing a compelling case that jurisdiction would be unreasonable. *See Briskin*, 135 F.4th at 751. There is a seven-factor test for assessing the reasonableness of asserting personal jurisdiction:

> (1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

4

*Id.* at 761.

In the case at bar, these factors largely weigh in favor of Plaintiffs, not the entity defendants. At most one or two of the factors weigh in favor of the entity defendants but not so much that the Court could say there is a compelling case that the exercise of jurisdiction would be unreasonable. For example, on the first factor, even if the U.S. customer segment may not be great (in terms of percentages), it is not insignificant, particularly in light of the entity defendants' conscious decision to make the Rail Monsters website/app available to U.S. customers and their use of Google Ads to promote Rail Monsters in the United States. On the second factor, the declarations submitted by the entity defendants indicate there is some burden in having litigation in the United States, but available technology can temper burdens – *e.g.*, the parties may use video depositions so that individuals do not need to physically present for depositions in the United States. And Plaintiffs indicated at the hearing they were willing to take the depositions in the U.K. if necessary. Furthermore, burdens have been reduced in light of Plaintiffs' promise to drop the individual defendants from the suit. Defendants present no evidence of their financial situation and thus failed to prove defending the suit in the United States would jeopardize their financial future. Finally, factors (3)-(7) must take into account that Plaintiffs are bringing claims under U.S. and California state law. Notably, in *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 974 (9th Cir. 2021), the Ninth Circuit held that factors (3)-(7)

> weigh[ed] in favor of jurisdiction because of the territorial nature of [the plaintiff's] claims. Although litigation against a foreign corporation "creates a higher jurisdictional barrier than against a citizen from a sister state because important sovereignty concerns exist," the resolution of [the plaintiff's] claims will unlikely undermine Australian sovereignty. [The plaintiff] seeks only the determination and enforcement of its rights under United States trademark law and California unfair competition law and challenges [the plaintiff's] sales only in the United States.
>
> Because [the plaintiff's] claims rest on the law of California and the United States, the United States would provide "the most efficient judicial resolution of the controversy," as well as better provide [the plaintiff] "convenient and effective relief." The United States also has a clear interest in protecting its consumers from confusion and providing redress for violations of its trademark laws. Although [the defendant] asserts that [the plaintiff] "has not provided any evidence that Australia, or any other jurisdiction, is unavailable to adjudicate a trademark dispute such as this one," we have held that "[w]hether

5

> another reasonable forum exists becomes an issue only when the forum state is shown to be unreasonable." [The defendant] "has not made that showing."
>
> Though the burden on [the defendant] of litigating this case under a foreign dispute resolution system may be relatively high, it does not outweigh [the plaintiff's] interest in adjudicating its trademark dispute in the United States. The exercise of jurisdiction over [the defendant] is reasonable and thus satisfies the demands of due process.

*Id.* at 984. An analysis of factors (3)-(7) in the instant case would be similar to the analysis above from *Ayla*.

Accordingly, the Court rejects Defendants' contention that personal jurisdiction is lacking over the entity defendants in the instant case. Plaintiffs have sufficiently laid out a prima facie case of specific jurisdiction based on the first two prongs, and Defendants have failed to make a compelling case that the exercise of personal jurisdiction in this case would be unreasonable.

B.  <u>Plaintiffs' Motion for Expedited Discovery</u>

At the hearing, Plaintiffs expressly stated that their motion for expedited discovery is moot. This is also confirmed by the stipulation between the parties to stay discovery for a certain period. That being said, because the Court is denying the motion to dismiss for lack of personal jurisdiction, and there is an interest in seeing if this case can be resolved through ADR, the Court stated that it would allow some limited merits discovery to take place in advance of ADR. The Court directed the parties to meet and confer to see if they could reach agreement on narrowly tailored discovery and set a further status conference so that the parties could report back on any disputes. The purpose of this limited discovery is to facilitate early ADR.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## II. CONCLUSION

For the foregoing reasons, the Court denies the motion to dismiss for lack of personal jurisdiction, but based on the understanding that Plaintiffs will make the amendments they stated they would make. Plaintiffs' motion for expedited discovery is moot.

This order disposes of Docket Nos. 26 and 57.

**IT IS SO ORDERED**.

Dated: July 21, 2025

_____
EDWARD M. CHEN
United States District Judge